## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VONDA REESE, | Civil Action No.   3:21-cv-03 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| NORTHWEST BANK, NORTHWEST BANCSHARES, INC., JONATHAN E. ROCKEY, MICHAEL J. MCANDREW and DEBORAH S. BENDER, | |
| Defendants. | |

## COMPLAINT

COMES NOW the PLAINTIFF, Vonda Reese, through her undersigned attorneys, who in support of her COMPLAINT, respectfully avers as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Vonda Reese brings this civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").  Reese—a loyal, 32-year employee—was subjected to discrimination in the terms and conditions of her employment, and ultimately terminated, due to her gender and age, and because she opposed conduct made unlawful by Title VII, the ADEA and the PHRA.

2.      Reese also brings claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §260.1, *et seq.*  Defendants Northwest

Bank and Northwest Bancshares, Inc. deprived Reese of her vested equity awards under incentive plans, breaching their contractual obligation to Reese and violating the WPCL.

## PARTIES

3.     Plaintiff Vonda Reese ("Plaintiff" or "Reese") is a 54-year-old woman who resides in Clearfield County, Pennsylvania. At all relevant times, Plaintiff was an "employee" of Northwest Bank within the meaning of Title VII, the ADEA and the PHRA.

4.     Defendant Northwest Bancshares, Inc. ("NBI") is a publicly traded Maryland corporation with its principal place of business at 100 Liberty Street, Warren, PA 16365.  NBI sponsors non-ERISA equity incentive plans for the benefit of its and its subsidiaries' employees.

5.     Defendant Northwest Bank ("Northwest" or the "Bank") is a Pennsylvania corporation with its principal place of business at 100 Liberty Street, Warren, PA 16365. Northwest is a subsidiary of NBI.  Northwest operates and regularly does business throughout Western Pennsylvania, including in Clearfield County where Plaintiff resides, as well as in Ohio, New York and Indiana. At all relevant times, Northwest employed more than 20 full-time employees and was a covered "Employer" within the meaning of Title VII, the ADEA and the PHRA.

6.     Defendant Jonathan E. Rockey is an adult man who resides in Centre County, Pennsylvania.

7.     Defendant Michael J. McAndrew is an adult man who resides in Centre County, Pennsylvania.

8.     Defendant Deborah S. Bender is an adult woman who resides in Cambria County, Pennsylvania.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Plaintiff's federal law claims pursuant to

28 U.S.C. § 1331, and supplemental jurisdiction over her related state law claims under

28 U.S.C. § 1367.

10.     Venue is proper in the United States District Court for the Western District of

Pennsylvania pursuant to 28 U.S.C. § 1391, as Defendants Northwest and NBI maintain offices

and facilities and reside within this federal District, and all Defendants reside in Pennsylvania.

## FACTS

11.     Northwest is a full-service financial institution that offers business and personal

banking products, employee benefits and wealth management services, and insurance, and which

operates branch offices in several states including Pennsylvania.

12.     Northwest employed Reese from April 1987 until November 26, 2019—more

than 32 years.

13.     Reese started as a teller in a Bradford, Pennsylvania branch office.

14.     A hard worker and a strong performer, Reese was repeatedly promoted within the

Bank.

15.     Reese received many "distinguished" performance reviews—the most favorable

rating given out by the Bank.

16.     In spring 2015, the Bank promoted Reese to Assistant VP/Cash Management

Advisor ("CMA"), and she began reporting directly to Central Region President Jon Rockey.

She worked out of a Bank administrative center in Curwensville, in Clearfield County,

Pennsylvania.

17.     Reese was the only female "Business Partner" ("BP") in the Central Region for most of her time as CMA; the other BPs (*e.g.*, Financial Advisors, Employee Benefits Representative, and Health, Property & Casualty Insurance Representatives) were all men.

18.     Male BPs and managers often received preferential treatment.

19.     Male BPs and male branch managers were frequently invited to join region management in golf outings, holiday get-togethers, shooting tournaments, and Bank-sponsored social functions.  Reese rarely received an invitation to these events.

20.     Male BPs were permitted to attend Eastern District Advisory Board business meetings—where they could make new contacts and generate lucrative business leads—though Rockey denied Reese's requests to attend on multiple occasions.

21.     On information and belief, male BPs had access to Bank information updates and other Bank materials from their individual department heads to assist them in selling their respective products, as did CMAs outside the Central Region, but Central Region management refused Reese's requests to access materials that pertained to Business-related accounts (her area of responsibility) that would assist her in selling cash management services and products.

22.     Central Region management were quick to find fault with female employees and, during the time Reese worked in the Central Region, she witnessed region management harass and undermine several strong, female managers.

23.     After Reese reported a conflict of interest involving Area Manager ("AM") Elizabeth Moore in late 2017, as required under Bank policies, Moore then began to undermine Reese with region management who were already biased against female employees.

24.     Around October 18, 2018, Rockey summoned Reese to a meeting at his office.

25.     At the meeting, which included HR Rep. Rebekah Moore via telephone conference, Reese learned AM Moore had made a false complaint to region management that Reese had provided incorrect information at a recent sales meeting with AM Moore and a potential client.

26.     Reese was so upset at the falsehood that she had to run to the bathroom, vomited and then returned.

27.     Reese was told that nobody was questioning her sales performance (which was excellent), but that she needed to "stay in [her] lane"—though she had not been outside it, and though Reese had significant knowledge of Bank operations outside of cash management from her first 28 years at Northwest.

28.     Reese explained that she had not provided incorrect information, her "lane" included a lot of other areas, and her knowledge of Bank operations from prior positions and earlier sales opportunities were part of why she was so successful as a CMA.

29.     Reese also pointed out that AM Moore was retaliating against Reese due to 2017 events.  Rockey did not disagree with that assessment, but did nothing about it.

30.     On February 13, 2019, Reese stopped into Rockey's office and asked for his permission to test for her Certified Treasury Professional ("CTP") designation.  (Under Bank policy, employees must obtain approval from their immediate supervisor to test.)

31.     Reese had never mentioned retiring to Rockey and did not plan to retire for many years.

32.     Nonetheless, Rockey denied Reese's request, stating, "It doesn't make sense if you are going to retire in 10 years."

33.     Rockey's response echoed, nearly verbatim, a statement by Executive Vice President John Golding weeks earlier at a leadership summit held at the Bank's corporate Headquarters in Warren, to an audience of 75–100 persons, including senior level bank Executives.

34.     Denying career advancement opportunities to employees who are within 10 years of regular retirement age (*i.e.*, 55 or older) discriminates against older workers based on age.

35.     Around late February 2019, Reese complained to James Swanson, Sr. Corporate VP and Cash Management Department head, that Rockey was denying her the opportunity to take the CTP test based on age, but he shrugged it off.

36.     On March 1, 2019, Rockey unexpectedly called Reese to a meeting in his office. When she got there, HR Representative Sarah Payne was already present.

37.     At the meeting, Rockey and Payne issued Reese a notice of disciplinary action ("NDA") for a "counseling notice" with boxes check for alleged "unacceptable/unprofessional behavior" and "violation of policy and procedures ("P&P").

38.     Rockey and Payne told Reese the NDA was due to other employees' "perception" that Reese talked down to others and went "outside [her] lane" at a recent monthly managers meeting, by commenting to others (who, as reported at the meeting, were not meeting their sales goals) on how to cross-sell mortgages and equity loans.

39.     Reese had worked in lending for nearly 20 years, had been told by management that she was considered one of the top mortgage lenders, and had ample experience upon which to meaningfully contribute to the group's discussion of this issue.

40.     Though region management faulted Reese for offering suggestions, male employees regularly provided suggestions and input on matters outside their specific job area.

Reese never heard of any criticism, much less discipline, of any male employee for doing so, and on information and belief, none was ever penalized for offering such input.

41.     Reese asked about the basis for the checked box indicating the NDA was for violation of P&P.  Rockey and Payne could not explain why it was checked, and Payne, unsure, told Reese that "we'll have to look into that".

42.     Rockey and Payne then told Reese they were going to go over her annual review (which she had not previously seen), even though employees are ordinarily given their reviews in advance so they can read and be prepared to discuss the issues.

43.     It quickly became clear that the review was based on inaccurate information and contained multiple errors.

44.     First, Reese was scolded for sending a new account to one Bank branch when the referral had come from another.  (In fact, two branches had referred the same client to Reese on or about the same day, and so Reese had properly sent the account to the client's preferred branch, at his direction.)  This was cited as a criticism in Reese's review, even though she had never been asked about it, and though Rockey did not check the referral system, which would have validated Reese's actions.

45.     Next, in the review, Reese was criticized based on inaccurate information about the municipal dollars in her pipeline.

46.     At that point, Reese asked permission to retrieve her laptop and used it to show Rockey and Payne proof that both of these criticisms (the branch referral and the pipeline issue) were unjustified.

47.     Reese then asked Rockey and Payne to delay further discussion of her review until after she had a chance to go over it in detail and consult her records.  They agreed to have a follow-up conference call to go over the rest of the review in about a week.

48.     Payne told Rockey that she would send the review back to him to make corrections.

49.     Reese again brought up her interest in testing for her CTP, and asked to be permitted to take it, and Rockey responded, "I've already told you it doesn't make sense for the bank to spend the money if you are going to retire in 10 years."

50.     When Reese asked Rockey how old he believed she was, HR Rep Payne, appearing uncomfortable, stammered to Reese that she didn't think Reese looked a day over 35.

51.     Although Rockey, Payne and Reese had agreed to have a conference call to finish going over Reese's review around March 8, it did not occur.  (As a result, Reese's salary adjustment was delayed indefinitely.)

52.     On or about March 11, 2019, Reese reached out to HR Rep. Payne by phone.

53.     Reese asked about completing her review.  Payne told Reese it had to await Rockey's return from a pre-scheduled medical leave.

54.     Reese then told Payne that she believed Rockey was wrongfully denying her CTP testing based on her age, and requested a meeting with HR Director Steve Crissey to address it.

55.     Northwest could have immediately addressed Reese's CTP testing complaint, since HR Rep. Payne witnessed Rockey's refusal to allow Reese to test based on her age, but the Bank did nothing to address it for months.

56.     On May 7, 2019, Reese finally met with Crissey and HR Rep. Rebekah Moore.

57.     Reese expressed fear about reporting concerns; they told her that she would be protected from retaliation.

58.     Reese brought up the NDA and her review, and told Crissey that region management were scrutinizing her actions and looking for excuses to find fault with her, in violation of Title VII.

59.     She then told Crissey that her complaints and concerns about retaliation were being discounted and ignored, she was being harassed, others were interfering with her ability to perform the duties of her role, and she had been denied CTP training based on age.  She told Crissey she wanted to make a formal complaint.

60.     Crissey assured Reese that he took her concerns seriously and would investigate. He said he would get back to her the next week.

61.     Crissey did not get back to Reese until well over a month later on June 17, 2019.

62.     On that date, Crissey and Reese had a brief follow-up call, but Crissey was repeatedly interrupted by other calls, and admitted he was unprepared to discuss the issues in detail.

63.     Crissey assured Reese that he did not believe she violated any policy, and that someone was working to correct the NDA.

64.     Reese asked if Rockey was aware he had violated the law when denying her requests to test for her CTP based on age, as she was fearful of retribution.  Crissey did not answer the question, but responded generally that "conversations were being had".

65.     With respect to her annual review, Crissey advised that her written rebuttal (which she had provided to Crissey on May 7) could not be attached to her review due to system

limitations, although this was belied by earlier instructions given by Payne to Rockey at the March 1, 2019 meeting.

66.     Crissey asked Reese, again, if she was sure she wanted him to lodge a formal investigation into her complaints, which she answered affirmatively.  Although he said he would get back to her within a week, it took nearly a month.

67.     On July 10, 2019, Reese had a conference call with Crissey and Julia McTavish, Senior Executive Vice-President and head of the Bank's HR department.

68.     On the call, Crissey and McTavish assured Reese that they would support her if she chose to pursue the CTP designation—but the deadline to sign-up for the test had passed and Reese was not able to enroll at that point.

69.     When Reese asked about correcting her review, she was told HR was "still working on it."

70.     With respect to the NDA, Crissey and McTavish confirmed that she did not violate any policy or procedure and could expect to receive a corrected NDA.

71.     Reese raised her discrimination and retaliation concerns with them, and told them that she believed there was a pattern of abuse in the Central Region.  She noted that another female had been driven out due to similar abuse.

72.     Crissey and McTavish told Reese they would investigate, and confirmed that she (Reese) understood that they would be reaching out to Bank personnel, including Rockey, about her complaints.

73.     As of August 1, 2019, Reese's review and slated salary adjustment (which she should have received beginning March 1) were five months overdue, and her HR complaints had been pending unresolved for nearly as long.

74.     Under the Bank's Problem Solving Policy, HR is required to address complaints within 30 days or less.

75.     On August 1, 2019, at Rockey's request, Reese attended a meeting with Rockey, and District Managers Mike McAndrew and Deb Bender at Northwest's executive offices in State College in Centre County, Pennsylvania.

76.     At the meeting, Reese went over her year-to-date results (she was on track to meet or exceed all goals), and an upcoming advisory board power-point presentation that she had prepared.

77.     As Rockey had invited Reese to raise any other issues of concern, Reese brought forth her concern that management were jumping to conclusions, assuming the worst even when she had done nothing wrong, not communicating with her when they thought there was an issue, and creating a hostile work environment for her.

78.     The meeting ended without a resolution, as Rockey had to stop so he could attend another conference call.  Reese left the room in tears.

79.     After the meeting, the managers contacted HR.

80.     On information and belief, they also "joked" about the meeting.

81.     That same day, HR asked each to submit a written statement recounting everything he or she could recall from the August 1 meeting.

82.     Rockey's, Bender's and McAndrew's August 1, 2019 statements noted (in some cases repeatedly) that Reese had said they were subjecting her to a hostile work environment.

83.     None of the August 1, 2019 statements expressed that Rockey, Bender or McAndrew felt unsafe or worried that Reese would commit violence.

84.     None of the August 1, 2019 statements reference any statements about guns.

85.     The next day, however, McAndrew contacted HR again, and claimed for the first time that he was "freaked out" and "concerned" about what Reese might do at a meeting the next week—purportedly because Reese "always talks about guns" and "speaks about them more and more".  (In fact, when HR later asked McAndrew to list specific instances when Reese had mentioned guns, he could only remember one instance from years earlier.)

86.     McAndrew's belated claim that he was afraid of what Reese—a devoted, 32-year employee who had not mentioned guns at the August 1 meeting nor threatened to harm anybody—might do, was a pretext for illegal discrimination and retaliation.

87.     Many Northwest employees own guns and/or have discussed guns and gun-related hobbies in the workplace, including both McAndrew and Rockey, without facing discipline or anyone suggesting they might commit violence because of it.

88.     Nonetheless, on August 5, 2019, HR Reps. Payne and Moore advised Reese that she was being placed on administrative leave as unspecified others (allegedly) felt "threatened" at the August 1, 2019 meeting.

89.     On the morning of August 7, 2019, Northwest was put on notice that Reese's placement on administrative leave was retaliation for her assertion of protected rights.

90.     That same day, in a further act of retaliation, and to paper the file, Northwest HR solicited supplemental statements from McAndrew, Bender and Rockey, as to whether they ever in the past felt threatened or unsafe around Reese and on her alleged statements mentioning firearms.

91.     On August 12, 2019, Reese filed a Charge against Northwest with the Equal Employment Opportunity Commission ("EEOC").

92.     Reese remained on involuntary administrative leave for months.

93.     During the leave, Northwest never provided Reese with a corrected NDA or a revised 2019 performance review, as had previously been promised.

94.     During the leave, Northwest HR never contacted Reese to advise of any steps taken to investigate and address her pending internal discrimination complaints.

95.     During the leave, Northwest never sought to interview Reese about the August 1, 2019 events that were the Bank's purported (pretextual) basis for her discharge.

96.     Northwest terminated Reese effective November 26, 2019.

97.     In doing so, Northwest disregarded its own employee standards policy—under which discipline is normally progressive.

98.     In order to deprive Reese of incentive (stock option) awards under NBI's Equity Incentive Plans, Northwest wrongfully classified her separation as a termination for cause.

99.     Reese has suffered severe emotional distress, loss of income, loss of wages and employee benefits and other emoluments of employment, loss of professional advancement opportunities, and damage to her reputation as a result of the Northwest's discrimination and retaliation against her.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

100.     On August 12, 2019, Reese filed a Charge of Discrimination against Northwest with the EEOC alleging sex and age discrimination, and retaliation, which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

101.     On December 17, 2019, Reese filed a second Charge of Discrimination against Northwest with the EEOC, alleging sex and age discrimination, and retaliation, which was dual-filed with the PHRC.

102.     On October 5, 2020, the EEOC issued Notices of Right to Sue on both Charges.

103.    Reese has exhausted her administrative remedies.

104.    This action is timely filed.

## CAUSES OF ACTION

### COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### (*Sex Discrimination, Retaliation*)

105.    Paragraphs 1-104 are incorporated by reference.

106.    As a result of the conduct described above, Northwest has discriminated on the basis of sex and retaliated against Reese for opposing unlawful discrimination in violation of Title VII.

107.    Northwest discriminated against Reese on the basis of sex by subjecting her to harassment and a hostile work environment, holding her to different standards of conduct, scrutinizing her performance, placing her on involuntary leave, discharging her, and classifying the discharge as for cause.

108.    Reese's discrimination complaints and subsequent filing of an EEOC Charge constitute protected activity under Title VII.

109.    Northwest retaliated against Reese for her protected activity by holding her to different standards of conduct, scrutinizing her performance, placing her on involuntary leave, discharging her, and classifying her discharge as for cause.

110.    As a result of Northwest's wrongful acts, Reese has suffered, and continues to suffer, severe emotional distress, lost wages and other emoluments of employment including, but not limited to, the value of lost benefits, retirement contributions and the like, and out-of-pocket expenses relating to termination.

111.    Northwest's conduct was willful, and in reckless disregard of her federal rights, justifying the award of punitive damages.

## COUNT II
### Violation of the Age Discrimination in Employment Act of 1967
### (*Age Discrimination, Retaliation*)

112.    Paragraphs 1-111 are incorporated by reference.

113.    Reese was in her 50s at all relevant times, and was a member of the protected age class.

114.    In taking the above-described acts, Northwest discriminated against Reese because of age, and retaliated against her for opposing age discrimination, in violation of the ADEA.

115.    Northwest discriminated against Reese because of age by subjecting her to harassment and a hostile work environment, subjecting her to an illegal age discriminatory policy, denying her the opportunity to test for her CTP, placing her on involuntary leave, discharging her, and classifying the discharge as for cause.

116.    Reese's discrimination complaints to Northwest and subsequent filing of an EEOC Charge are protected under the ADEA.

117.    As described above, Northwest retaliated against Reese for her protected discrimination complaints and subsequent filing of an EEOC Charge by scrutinizing her performance, holding her to different standards of conduct, placing her on involuntary leave, discharging her, and classifying the discharge as for cause.

118.    Similarly-situated Northwest employees who were younger than Plaintiff were not denied the opportunity to test for the CTP certification.

119.    As a result of Northwest's wrongful acts, Reese has suffered, and continues to suffer, severe emotional distress, loss of wages and other emoluments of employment including, but not limited to, the value of lost benefits, retirement contributions and the like, and out-of-pocket expenses relating to termination.

120.    Northwest's conduct was willful, in that it either knew or acted with reckless disregard as to whether its conduct was prohibited by the ADEA, justifying imposition of liquidated damages.

## COUNT III
### Violation of Pennsylvania Human Relations Act
*(Age Discrimination, Sex Discrimination, Retaliation)*

121.    Paragraphs 1-120 are incorporated by reference.

122.    As a result of the foregoing, Northwest, Rockey, McAndrew and Bender have violated the PHRA.

123.    Northwest has discriminated against Reese on the basis of age and sex, and retaliated against Reese for her protected opposition to discrimination, in violation of the PHRA, by harassing her, subjecting her to a hostile work environment, scrutinizing her performance, holding her to different standards of conduct, subjecting her to an illegal age discriminatory policy, denying her opportunities to take the CTP test, placing her on involuntary leave, discharging her, and classifying the discharge as for cause.

124.    By virtue of their conduct and supervisory positions, Rockey, McAndrew and Bender aided and abetted Northwest's discrimination and retaliation against Reese.

125.    Reese's discrimination complaints to Northwest and subsequent filing of an EEOC Charge are protected under the PHRA.

126.     As a result of Northwest's, Rockey's, McAndrew's and Bender's wrongful acts, Reese has suffered, and continues to suffer, severe emotional distress, damages to her reputation, lost wages and other emoluments of employment including, but not limited to, the value of lost benefits, retirement contributions and the like, and out-of-pocket costs relating to her termination.

**COUNT IV**
**Breach of Contract**

127.     Paragraphs 1-126 are incorporated by reference.

128.     Reese was granted restricted stock awards under NBI's 2011 Equity Incentive Plan (the "2011 Plan"), subject to a multi-year vesting schedule.

129.     Reese was granted incentive stock options and restricted stock awards under NBI's 2018 Equity Incentive Plans (the "2018 Plan") (collectively the 2011 and 2018 Plans are referred to herein as the "Plan"), subject to a multi-year vesting schedule.

130.     Under the terms of the 2011 Plan, in the event of a termination for "cause", all stock options granted to a participant that have not been exercised (whether vested or unvested), and all unvested restricted stock granted to a participant, are forfeited.

131.     Under the 2018 Plan, in the event of a termination for "cause", all Options that have not been exercised will expire and be forfeited.

132.     By contrast, upon a participant's termination for any reason other than disability, death, retirement or termination for Cause, stock options are ordinarily exercisable for three months after separation.

133.     "Cause" is a defined term under the Plan.

134.     There was no "Cause" for Reese's termination within the meaning of the Plan.

135.    NBI and Northwest breached the equity incentive contracts, and the covenant of good faith and fair dealing, by classifying Reese's separation as for "Cause".

136.    NBI and Northwest breached the equity incentive contracts, and the covenant of good faith and fair dealing, by treating certain of Reese's stock awards as immediately forfeited and not allowing her to exercise them after termination.

**COUNT V**
**Violation of WPCL, 43 P.S. §260.1, *et seq.***

137.    Paragraphs 1-136 are incorporated by reference.

138.    The restricted stock and incentive stock options promised to Reese through the equity incentive contracts constitute wages with the meaning of the WPCL.  43 P.S. § 260.2a

139.    Northwest and NBI willfully failed to pay Reese these wages or to allow Reese to exercise them during the three-month period post-termination.

140.    As a result, Reese is entitled to liquidated damages in the amount of 25% of wages due, or $500, whichever is greater, in addition to the value of unpaid wages.  43 P.S. § 260.10.

141.    Pursuant to 43 P.S. §260.9a, Reese is entitled to costs and reasonable attorneys' fees incurred in bringing this claim.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, based on the foregoing, Reese asks the Court to:

(a)      Assume jurisdiction of this case;

(b)      Find and declare that Northwest is liable for age and sex discrimination and retaliation in violation of Title VII, the ADEA and the PHRA;

(c)      Find and declare that Rockey, McAndrew and Bender aided and abetted discrimination and retaliation in violation of the PHRA;

(d)     Find and declare that NBI and Northwest breached the equity incentive contract;

(e)     Find and declare that NBI and Northwest violated the WPCL;

(f)     Award Reese lost wages and other lost emoluments of employment including, but not limited to, the value of lost benefits and incentives, retirement contributions and the like;

(g)     Award Reese compensatory damages for pain, humiliation and other emotional distress and damage to reputation and professional standing;

(h)     Award Reese compensatory damages for NBI's and Northwest's breach of the equity incentive contract, including consequential damages;

(i)     Award Reese liquidated damages under the WPCL;

(j)     Award Reese punitive damages under Title VII;

(k)     Award Reese liquidated damages under the ADEA;

(l)     Award Reese back and front pay;

(m)     Award Reese attorneys' fees, costs and the expenses of the action;

(n)     Award Reese pre- and post-judgment interest as provided by law; and

(o)     Award Reese such other relief as this Court deems necessary and proper.


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Vonda Reese, hereby demands a jury trial on all issues so triable in the above-captioned action.

Respectfully submitted,

Dated:  January 4, 2021

s/Maureen Davidson-Welling

Maureen Davidson-Welling, Esquire
PA ID No. 206751
mdw@stembercohn.com
Jonathan K. Cohn
PA  ID No. 92755
jcohn@stembercohn.com
**STEMBER COHN &**
    **DAVIDSON-WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.: (412) 338-1446

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VONDA REESE,

               Plaintiff,

    v.

NORTHWEST BANK, NORTHWEST
BANCSHARES, INC., JONATHAN E.
ROCKEY, MICHAEL J. MCANDREW and
DEBORAH S. BENDER,

               Defendants.

Civil Action No.

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

The undersigned also hereby certifies that the foregoing was served via U.S. Mail upon the following entity:

Pennsylvania Human Relations Commission
301 Chestnut Street
Suite 300
Harrisburg, PA 17101-2702

Dated:  January 4, 2021

/s/Maureen Davidson-Welling
Maureen Davidson-Welling